IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GAYRATJON TUHTAMURODOV,**<br>**Petitioner,**<br>**v.**<br>**JOHN E. RIFE, *et al*.,**<br>**Respondents.** | **CIVIL ACTION NO. 26-8257** |

**MEMORANDUM OPINION**

**Rufe, J.** **November 3, 2026**

Petitioner Gayratjon Tuhtamurodov brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security ("DHS") as unlawful. Petitioner argues that his detention violates the substantive and procedural portions of the Fifth Amendment Due Process Clause, as well as the procedures for immigration bond laid out in 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. The government opposes the Petition, but submits to the Court that this case has only "immaterial" factual differences from previous cases in which this Court has granted habeas relief to non-citizens in DHS custody and that "[i]f the law as interpreted and applied in those . . . cases is similarly applied here, the result will be that Mr. Tuhtamurodov will be ordered immediately released from custody."[1]

Petitioner's custody violates the Fifth Amendment, and he is entitled to relief in the form of immediate release. As is required, and as has been this Court's practice, the Court conducts an individualized analysis of the facts and the law in making this ruling.

[1] Resp. Opposing Pet. for Habeas Corpus Writ (hereinafter "Resp.") [Doc. No. 4] at 2.

## I. Background

Petitioner is a national and citizen of Uzbekistan who entered the United States on October 1, 2021.[2] Shortly thereafter, he was arrested by a border patrol agent, taken into custody in Arizona, and placed in removal proceedings.[3] On November 10, 2021, an Immigration Judge ordered Petitioner's release from custody under bond of $8,000 per stipulation by the government.[4] Both parties waived appeal of the Immigration Judge's order.[5] Following his release, Petitioner filed an application for asylum in January 2022.[6] Petitioner's removal proceedings and asylum application remain pending.[7]

On October 27, 2026, Immigration and Customs Enforcement (ICE) agents "encountered" Petitioner while conducting vehicle inspections near Route 13 in Bristol, Pennsylvania.[8] Petitioner, who works as a truck driver, presented his commercial drivers license to the agents.[9] The license listed a residential address in Philadelphia, rather than the New York address identified in his Immigration Bond.[10] Based on "the pendency of ongoing removal proceedings" and "biometric information," the ICE agents at the scene created and executed an administrative warrant for Petitioner's arrest.[11] "At some point," ICE decided that Petitioner would be "processed as a custody redetermination due to his failure to update his correct address

---

[2] Form I-213, Resp. Ex. A [Doc No. 4-1] at 1, 3.

[3] *Id.* at 3.

[4] IJ Bond Order, Pet. for Writ of Habeas Corpus (hereinafter "Pet.") Ex. A [Doc No. 1-3].

[5] *Id.*

[6] Pet. ¶ 25.

[7] *Id.* ¶ 31.

[8] Form I-213 at 2.

[9] Resp. at 1.

[10] *Id.* at 5-6.

[11] Form I-213 at 2; Form I-200 Warrant for Arrest of Alien, Resp. Ex. D [Doc. No. 4-4].

with ICE/DHS and the [Executive Office for Immigration Review]."[12] Petitioner was detained at FDC-Philadelphia.[13] The government indicates that "ICE is in the process of executing and filing with the immigration court the required forms for a bond hearing," but none is yet scheduled.[14]

On the night of October 28, 2026, Petitioner filed the instant Petition for a Writ of Habeas Corpus.[15] The next morning, this Court entered an order directing the government to show cause as to why the Petition should not be granted, setting a hearing for November 5, 2026, and prohibiting Petitioner's transfer from this Court's jurisdiction.[16] As the parties have agreed that the Petition can be decided based on the parties' written submissions without the need for a hearing, the hearing will be cancelled and the Court will consider the Petition and the government's written response thereto.

## II. Legal Standard

Federal district courts are authorized to grant a § 2241 petition where Petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[17] The petitioner has the burden of showing that the detention violates the Constitution of the United

[12] Resp. at 6; Form I-213 at 2.

[13] Resp. at 6.

[14] Resp. at 11.

[15] Pet.

[16] 10/29/26 Order [Doc. No. 2]. The government has notified the court that, at around 6:30 a.m. on October 29, in between the time when the Petition was filed and when it was assigned to the Court, ICE transported Petitioner from FDC-Philadelphia to the Moshannon Valley Processing Center, which is outside of this Court's jurisdiction. (Supp. Resp. to Pet. for Habeas Corpus Writ [Doc. No. 5]). This transfer, though less than two days after Petitioner's initial detention, occurred prior to the entry of the Court's order prohibiting his removal from its jurisdiction. On November 2, after filing its Response, the government requested Petitioner's return to Philadelphia, where he is currently located. *Id.*

[17] 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citations and quotation marks omitted)).

States or federal law.[18] The government contends, despite its concessions, that Petitioner is lawfully detained under 8 U.S.C. § 1226(a).

## III. DISCUSSION

Petitioner argues that his detention violates the Due Process Clause because it occurred without a change in circumstances following his release on bond and without pre-detention notice or opportunity to be heard in front of a neutral decisionmaker.

As a preliminary matter, the Court finds that it has jurisdiction to review Petitioner's claims. 8 U.S.C. § 1226(e) does not preclude review of a constitutional challenge to the process afforded before detaining a noncitizen pursuant to § 1226(a),[19] nor do any other jurisdiction-stripping provisions of the INA bar review of the Petition.[20]

### A. Exhaustion

Generally, petitioners seeking habeas relief under § 2241 are required to exhaust administrative remedies before the habeas petition can be heard.[21] However, as the statute

[18] 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

[19] *Demore*, 538 U.S. at 516-17 (holding that § 1226(e) does not bar review of a constitutional challenge to "the statutory framework that permits . . . detention"); *Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (plurality opinion) (holding that a challenge to "the extent of the Government's detention authority" falls outside the scope of § 1226(e)).

[20] 8 U.S.C. § 1252(g), which bars review of "any cause or claim . . . arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter," does not preclude judicial review of the instant Petition. Petitioner challenges his detention, rather than the commencement of removal proceedings.

8 U.S.C. § 1252(a)(2)(B)(ii) does not apply to this case. Section 1252(a)(2)(B)(ii) bars review of only a "decision or action of the Attorney General or the Secretary of Homeland Security" that is committed to those officials' discretion. Authority under the detention statute is not a matter of discretion, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), so § 1252(a)(2)(B)(ii) does not preclude judicial consideration of the Petition.

Finally, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Secretary of United States Department of Homeland Security*, 950 F.3d 177, 186 (3d Cir. 2020). Petitioner's argument that he is unlawfully detained does not challenge his removal.

[21] *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)).

contains "no [explicit] exhaustion requirement,"[22] exhaustion is a matter of "sound judicial discretion."[23] A § 2241 habeas petitioner need not exhaust administrative remedies "if the issue presented involves only statutory construction,"[24] or "if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury."[25]

The government argues that the proper avenue for Petitioner to challenge his detention is through a bond hearing in front of an immigration judge.[26] But exhaustion of an administrative remedy that may become available in the future would be futile where, as here, Petitioner alleges that he is *currently* being deprived of liberty unlawfully.[27] It is also not clear that such administrative remedies are genuinely available to Petitioner at all. The government states only that "ICE is in the process of executing and filing . . . the required forms for a bond hearing," and provides no confirmation to the Court that one has been scheduled.[28] "A remedy that exists only

[22] *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).

[23] *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs.").

[24] *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012).

[25] *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).

[26] Resp. at 10-11; *see also* 8 C.F.R. § 236.1(d) (implementing 8 U.S.C. § 1226 and allowing for post-detention appeals from custody decisions).

[27] *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) ("A later bond hearing does not necessarily cure the alleged constitutional deprivation that preceded it."); *see also Gopie v. Lyons*, No. 25-05229, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) ("[A] bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance.")); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (explaining that ICE's "failure to conduct any kind of individualized assessment *before* detaining" an individual meant that "any post-deprivation review by an immigration judge would be inadequate"); *De Los Santos Medina v. Jamison*, No. 26-cv-6800, 2026 WL 2742071, at *3 (E.D. Pa. Sep. 16, 2026) (holding that petitioner detained under § 1226(a) need not exhaust post-deprivation administrative remedies to challenge constitutionality of initial custody determination).

[28] Resp. at 11.

if ICE elects to make it accessible is not an available remedy Petitioner must exhaust."[29] Furthermore, as neither an immigration judge nor the Board of Immigration Appeals has jurisdiction to decide constitutional issues, "requiring [Petitioner] to exhaust his due process claims in front of a tribunal that does not have authority to adjudicate them would be futile."[30] Accordingly, the Court, exercising its discretion, finds that Petitioner is not required to exhaust administrative remedies before the Petition can be heard.

**B. Procedural Due Process Claim**

Petitioner challenges his detention under the Due Process Clause of the Fifth Amendment. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."[31] Furthermore, "[f]reedom from imprisonment—from government custody, detention, or other forms of government restraint—lies at the heart of the liberty that [the Due Process] Clause protects."[32] The Due Process Clause applies to Petitioner's detention, and "the question remains what process is due."[33]

[29] *Dos Reis*, 2026 WL 1746649, at *3; *cf. Ross v. Blake*, 578 U.S. 632, 642 (2016) (finding that, in the context of the PLRA, a prisoner "need not exhaust unavailable" remedies); *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025) (concluding that, in the context of the PLRA, an "administrative remedy is considered unavailable 'if a prisoner, through no fault of his own, was prevented from availing himself of it.'").

[30] *Basboga v. Jamison*, No. 26-cv-6694, 2026 WL 3033623, at *3 (E.D. Pa. Oct. 9, 2026); *see also Qatani v. Att'y Gen. U.S.*, 144 F.4th 485, 499-500 (3d Cir. 2025) ("[T]he Board [of Immigration Appeals'] lack of jurisdiction to adjudicate constitutional issues rendered it incapable of addressing the due process claim presented here." (internal quotation omitted)).

[31] *Zadvydas*, 533 U.S. at 693.

[32] *Id.* at 690.

[33] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

DHS must make an individualized pre-detention custody determination in order for its arrest of a noncitizen under § 1226(a) to satisfy due process.[34] Specifically, a custody decision under § 1226(a) "requires an individualized determination as to whether the noncitizen is a danger to property or persons and is likely to appear for any future proceeding."[35] The record here does not reflect an individualized assessment prior to Petitioner's detention, which the government readily admits:

> ICE did not have an administrative warrant prepared for Mr. Tuhtamurodov before he stopped at the highway inspection station and was questioned there. Nor had ICE conducted an individualized pre-detention assessment before that inspection stop and before learning about Mr. Tuhtamurodov's changed address during the stop. Moreover, Mr. Tuhtamurodov has no known criminal history, was gainfully employed at the time of detention, and alleges the pendency of an asylum application.[36]

The government's position is that "even under such circumstances ICE is permitted to detain such a non-citizen pending a bond hearing."[37] To determine whether this position aligns with the Due Process Clause, the Court must analyze three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional substitute procedural requirement would entail.[38]

---

[34] *De Los Santos Medina*, 2026 WL 2742071 at *4; *Dos Reis*, 2026 WL 1746649, at *4; *Hernandez Gonzalez v. Blanche*, No. 26-cv-6195, 2026 WL 2569475, at *4-5 (E.D. Pa. Aug. 31, 2026); *Regalado-Nauta v. Jamison*, No. 26-cv-6834, 2026 WL 2740528, at *3 (E.D. Pa. Sep. 16, 2026).

[35] *Dos Reis*, 2026 WL 1746649, at *4 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 493) (citation modified); *see also De Los Santos Medina*, 2026 WL 2742071 at *4.

[36] Resp. at 9-10.

[37] *Id.* at 10.

[38] *Mathews v. Eldrige*, 424 U.S. 319, 334 (1976). These factors apply in the context of noncitizens taken into civil immigration custody. *Buele Morocho v. Warden Phila. FDC*, 189 F.4th 287, 305-06 (3d Cir. 2026); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331-32 (3d Cir. 2021).

The Court will balance these factors with respect to Petitioner's detention to assess whether Petitioner received constitutionally sufficient process.

First, Petitioner has a "constitutionally protected interest in avoiding physical restraint."[39] Indeed, Petitioner's "interest in being free from physical detention" is "the most elemental of liberty interests."[40] The government stipulated to Petitioner's release from DHS custody on bond in 2021, and Petitioner thus maintains a protected liberty interest in his continued freedom from physical detention.[41] Second, the lack of an individualized custody determination creates a substantial risk of erroneous deprivation of Petitioner's liberty. [42] The government makes no attempt to connect the apparent sole justification for detaining Petitioner—his failure to report his changed address—to a need to place Petitioner in physical custody. In other words, the government cannot "explain why detention . . . is necessary for *this* Petitioner."[43] Therefore, the first two factors weigh in Petitioner's favor.

Third, the government has a legitimate interest in "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community."[44] But "[t]hose interests . . . support detention only when the Government connects them to the individual detainee."[45] The government's only reason for detaining Petitioner was his "failure to reside at

---

[39] *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997).

[40] *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

[41] *See Garcia v. Jamison*, No. 26-cv-2214, 2026 WL 1122608, at *6 (E.D. Pa. Apr. 24, 2026) ("Even as a noncitizen released from custody on bond, [Petitioner] has a protected liberty interest in his 'continued liberty.'").

[42] *See Buele Morocho*, 189 F.4th at 307 ("[T]he absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks presents a high risk of erroneously depriving Petitioners of their liberty interest." (citations omitted)).

[43] *Dos Reis*, 2026 WL 1746649, at *5.

[44] *Zadvydas*, 553 U.S. at 690.

[45] *Dos Reis*, 2026 WL 1746649, at *5; *see also Hernandez Gonzalez*, 2026 WL 2569475, at *5 ("[A]lthough the Government has a legitimate interest in ensuring noncitizens in removal proceedings appear when ordered and in protecting the community, those interests can be served through making individualized determinations about noncitizens it seeks to detain.").

the address reflected in his release paperwork and failure to update his address with the [Executive Office of Immigration Review]," with no consideration of Petitioner's pending asylum petition or his years of compliance with the conditions of his release on bond.[46] Even now, the government makes no argument that Petitioner is a danger to the community or a flight risk. Thus, the government's interest in Petitioner's detention without an individualized determination of the necessity of custody—weighed against Petitioner's interests in freedom from physical restraint and avoiding the risk of erroneous deprivation—is weak.[47]

The *Mathews* factors, on balance, weigh in favor of finding a due process violation.[48] The further requirement of an individualized pre-deprivation custody determination does not impose an undue burden on the government.[49] Accordingly, Petitioner's procedural due process rights were violated by his detention without a pre-detention individualized custody assessment.[50] As Petitioner is entitled to relief on this ground, the Court will not reach his substantive due process or bond regulation claims.

---

[46] Form G-166C Memo of Investigation, Resp. Ex. C [Doc. No. 4-3].

[47] *See Buele Morocho*, 189 F.4th at 307 ([T]he government's legitimate interest in preventing release of dangerous noncitizens and those who might fail to appear at future hearings does not outweigh the other two factors here, particularly when these non-criminal individuals were detained absent evidence that either is dangerous or a flight risk . . . ." (citation omitted)).

[48] *See id.* at 306-07 (finding due process violations where Petitioners' interest in avoiding physical restraint and the risk of erroneous deprivation from "the absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or a flight risk" outweighed "the Government's legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings" (citations omitted)).

[49] *Dos Reis*, 2026 WL 1746649, at *5; *see also C.W.M. v. Hermosillo*, No. 25-cv-2688, 2026 WL 183587, at *5 (W.D. Wash. Jan. 23, 2026) ("[A]lthough requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient.").

[50] As this Court has explained, "the Third Circuit's recent holding in *Buele Morocho* that mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2)(A) violates due process is consistent with the Court's present holding that detention under § 1226(a) requires an individualized determination of whether Petitioner is a danger to the community or a flight risk." *Sagbay v. Jamison*, no. 26-cv-7265, 2026 WL 2875765, at *5 n.47 (citing *Buele Morocho*, 189 F.4th at 306-07).

### C. Remedy

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."[51] As DHS' detention of Petitioner violates the Constitution, release is appropriate here.

## IV. Conclusion

For the reasons stated herein, the Petition for a Writ of Habeas Corpus will be granted, and the Court will order Petitioner's immediate release. An order will be entered.

[51] *Munaf v. Geren*, 553 U.S. 674, 693 (2008).